UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <u>EX REL.</u> TRADESMAN PROGRAM MANAGERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM SCHWITZER & ASSOCIATES, P.C., and WILLIAM SCHWITZER,<br><br>Defendants. | Case No.:<br><br>**<u>COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT</u>**<br><br>**<u>FILED IN CAMERA & UNDER SEAL</u>**<br><br>**<u>DO NOT PLACE ON PACER</u>**<br><br>**Jury Trial Demanded** |

Plaintiff-Relator, TRADESMAN PROGRAM MANAGERS, LLC ("Tradesman"), by and through the undersigned counsel, and in accordance with the Federal Rules of Civil Procedure and all other applicable rules, statutes, regulations, and governing legal authorities, hereby files the instant Complaint seeking aggregate damages recoverable by the United States of America, WILLIAM SCHWITZER & ASSOCIATES, P.C. ("Schwitzer Firm"), and WILLIAM SCHWITZER ("Schwitzer"), based upon personal knowledge and relevant documentation, for violations of the False Claims Act.

## **NATURE OF THE CLAIMS**

1.      This is an action to recover over nine (9) million dollars in actual and treble damages, along with statutory civil penalties, rightfully due and owing to the United States of America arising from false and/or fraudulent records, statements, and claims made and caused to be made by Defendants and/or their agents and employees, in violation of the federal False Claims Act, 31 U.S.C. § 3729, et seq. ("the FCA").

2.      This action seeks to recover millions of federal dollars wrongfully loaned to Defendant, with balances forgiven, through the Federal Government's Payroll Protection Program

*United States of America <u>ex rel</u> Tradesman. v. Schwitzer*
*Complaint*
*1 | P a g e*

("PPP"). The PPP provided a needed capital boost for small businesses to survive through the pandemic, and a pathway to borrowers for forgiveness of these loans – which Defendants took advantage of, to the detriment of taxpayers.

## THE PAYROLL PROTECTION PROGRAM

3.      The Federal Government has spent billions of dollars in stimulus funding, as well as other federal funding, to support and aid legitimate businesses through the coronavirus pandemic.

4.      Congress added sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 contains a new program called the Paycheck Protection Program ("PPP") and is party of the U.S. Small Business Administration's ("SBA") 7(a) Loan Program. These two sections are intended to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic and the COVID-19 Emergency Declaration issued by President Trump on March 13, 2020.

5.      Due to the COVID-19 emergency, many small businesses nationwide experienced economic hardship as a direct result of the Federal, State, and local public health measures that were being taken to minimize the public's exposure to the coronavirus. The SBA received funding and authority through the CARES Act to modify existing loan programs and establish the new PPP loan program to assist small businesses nationwide adversely impacted by the coronavirus pandemic.

6.      Section 1102 of the Act temporarily permits SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP. The CARES Act was intended to provide relief to America's small businesses expeditiously.

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
2 | P a g e

7.      The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness. Lenders are held harmless for borrowers' failures to comply with PPP rules.

8.      Borrowers had to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation. In general, Borrowers calculated an amount to borrow by aggregating payroll costs from the previous 12 months for employees whose principal place of residence is the United States. Annual employee salaries are capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

9.      One required certification on the application states, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

10.     Defendants were required to, and did in fact, make this certification as part of their PPP application.

11.     Defendants also "further certif[ied] that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

12.     Finally, Defendants certified that they "understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
3 | P a g e

13.    The very first guidance issued by the Small Business Administration ("SBA") and the Treasury Department on March 31, 2020, provided that loan applicants will need to certify that "Current economic uncertainty makes the loan necessary to support your ongoing operations," and that "The funds will be used to retain workers and maintain payroll..."

14.    On April 24, 2020, the SBA issued an Interim Final Rule, which provided that "SBA will allow lenders to rely on certifications of the borrower in order to determine eligibility of the borrower."

15.    Notable here, on April 23, 2020, further guidance was set forth that "Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary.  Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that '[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.'  Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business.  For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification... Any borrower that applied for a PPP loan prior to the issuance of this guidance and repaid the loan in full by May 4, 2020 will be deemed by SBA to have made the required certification in good faith."

16.    On May 13, 2020, the deadline to take advantage of the safe harbor provision was again extended to May 18, 2020.

17.    This action alleges that each of Defendants had no legitimate need for the PPP

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
*4 | P a g e*

funds as falsely certified, the loan request was knowingly <u>not</u> necessary to support its ongoing operations, and millions of dollars in PPP funds were diverted for improper personal use.

## THE FALSE CLAIMS ACT

18.    The FCA was enacted during the Civil War, and was substantially amended in 1986, and again in 2009 and 2010. Congress amended the FCA in 1986 to enhance the Federal Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as a primary tools for combating government fraud, was in need of modernization. The amendments create incentives for individuals to come forward with information about fraud against the Federal Government without fear of reprisals or inaction, and enable the use of private legal resources to prosecute fraud claims on the Federal Government's behalf.

19.    The FCA prohibits, *inter alia*, (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; and (2) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim. 31 U.S.C. §§ 3729(a)(1)(A), (B). Any person who violates the FCA is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(A) (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [28 U.S.C. § 2461 note; Public Law 104-410]).

20.    In 2009, Congress amended the FCA to clarify that a "claim" includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest..." 31 U.S.C. § 3729(b)(2).

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
*5 | P a g e*

21.    The FCA allows any person having information about an FCA violation to bring an action for himself and the Federal Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on Defendants during that time) to allow the Federal Government time to conduct its own investigation and to determine whether to join the suit.

22.    Based on the foregoing laws, *qui tam* Plaintiff/Relator seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which Defendants' misconduct has extended.

## PARTIES

23.    Plaintiff/Relator Tradesman Program Managers, LLC is a limited liability company duly organized and existing under the laws of the State of New York. At all times relevant herein, Tradesman maintained its principal place of business in the State of New York and is authorized to conduct business in New York.

24.    Relator brings this action on behalf of the United States of America, the true party of interest.

25.    Defendant William Schwitzer is a citizen of the State of New York. He is the founding and senior partner at the Schwitzer Firm, with an office at 820 2nd Avenue, 10th Floor, New York, NY 10017, and a personal residence in Nassau County. At all times relevant herein, William Schwitzer was licensed or otherwise authorized to practice law in the State of New York, and owned, operated, managed, and/or otherwise controlled the Schwitzer Firm.

26.    The Schwitzer Firm operate as personal injury law firms, whereby Defendants pursue recovery on claims for clients in exchange for a fee contingent upon recovery (the "contingency fee"). The contingency fee, at all times relevant herein, is governed by the terms of

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
6 | P a g e

a retainer agreement between the Defendants and their clients, the terms of which are typified in the attached **Exhibit "1,"** which provides for a 1/3rd contingency fee.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730. Although this issue is no longer jurisdictional after the 2009 amendments to the FCA, to Realtor's knowledge there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are used in 31 U.S.C. § 3730(e), as amended by Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02.)

28.     Moreover, whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations or transactions in this Complaint are based. Plaintiff researched and discovered through private investigation the pertinent dates of formation and other related entity information of Defendant, investigated their financial conditions in around the time the false statements were made and presented, and has materially added to any such disclosure through such investigation.

29.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants are New York entities.

30.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because Defendant can be found in and/or transacted business in this district, and because violations of 31 U.S.C. §§3729 *et seq.* alleged herein

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
7 | P a g e

occurred within this district. At all times relevant to this Complaint, Defendant regularly conducted substantial business within this district.

## FACTUAL ALLEGATIONS

31.     On or about May 14, 2019, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Jean Francisque v. Clifford B. Finkel, Jr., Inc., et al.

32.     On or about July 11, 2019, Defendants secured a substantial settlement, and obtained a corresponding contingency, in the matter of Jackson McLean v. Tytan Express, Inc., et al.

33.     On or about August 14, 2019, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Jennifer Pena v. Western Express, et al.

34.     On or about November 4, 2019, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Zohra Nauzad v. Mohammed Asef Nauzad, et al.

35.     On or about December 10, 2019, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Hashem Mull v. The United States of America.

36.     On or about December 18, 2019, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Charles Diop v. German Sandoval, et al.

37.     On or about December 19, 2019, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Richard A. Knight v. David Schick, et al.

38.     On or about January 9, 2020, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Joel Fernandez v. Henrid E. Brewer, et al.

39.     On or about February 19, 2020, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Jefferey Deluca v. The United States of America.

40.     On or about March 18, 2020, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Shante Satchell v. The United States of America.

41.     On or about April 15, 2020, Defendants obtained over $1.5 million in PPP funds. These funds were ultimately forgiven on or about July 8, 2021, in the amount of **$1,548,818**, at the expense of the Federal Government, and in turn, the taxpayer.

## WILLIAM SCHWITZER & ASSOCIATES PC

🕐 Why is my loan information here?

| Loan Amount | Amount Forgiven | Location | Industry | Date Approved |
|---|---|---|---|---|
| **$1,530,117** | **$1,548,818**<br>Includes any accrued interest | New York, NY<br>Urban | Offices of Lawyers | April 15, 2020 (First Round) |

| Where applicants said the money will go | | Lender | Jobs Reported | Business Type |
|---|---|---|---|---|
| Payroll | $1,530,117 | Valley National Bank | 85 | Subchapter S Corporation |
| Utilities | $0 | | | |
| Mortgage Interest | $0 | | | |
| Health Care | $0 | | | |
| Rent | $0 | Business Age | Loan Status | |
| Refinance EIDL | $0 | Existing or more than 2 years old | Forgiven | |
| Debt Interest | $0 | | | |

Recipient
### WILLIAM SCHWITZER & ASSOCIATES PC

| Location | Loan Status | Loan Amount | Date Approved |
|---|---|---|---|
| NEW YORK, NY | Forgiven as of July 8, 2021 | $1,530,117 | April 15, 2020 |

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
*9 | P a g e*

42.    On or about May 15, 2020, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Victor Parada v. Tewolde M. Manna, et al.

43.    On or about May 19, 2020, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Dinsmore Lampkin v. Mariely Rosado, et al.

44.    On or about June 16, 2020, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Aiden Jiwon Kim v. Mussa H. Barry, et al.

45.    On or about August 31, 2020, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Celena Meyo, et al. v. Jun Zhao.

46.    **On or about August 20, 2020, Schwitzer opened a new LLC, Starr of David LLC, with a registered address at the Schwitzer Firm; which in turn purchased a $5 million dollar equestrian facility, located at 199 Starr Ridge Rd. in December 2020, making a $2.2 million dollar down payment.**

## STARR OF DAVID LLC

| | |
|---|---|
| Company Number | 5810405 |
| Status | Active |
| Incorporation Date | 12 August 2020 (over 4 years ago) |
| Company Type | DOMESTIC LIMITED LIABILITY COMPANY |
| Jurisdiction | New York (US) |
| Registered Address | 820 2ND AVENUE, 10TH FLOOR<br>NEW YORK<br>10017<br>NY<br>United States |
| Directors / Officers | WILLIAM SCHWITZER, ESQ, dos process agent |

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
*10 | P a g e*

**Starr of David LLC**, Lake Ronkonkoma. Seller: Ronin Property Partners LLC, Bronx. Property: 199 Starr Ridge Road, Brewster 10509. Amount: $5 million. Filed Dec. 8.

| Sale Date | Buyer | Seller | Sale Price | Loan Amount |
|---|---|---|---|---|
| 12/03/2020 | STARR OF DAVID LLC | RONIN PROPERTY PARTNERS LLC | $5,000,000 | $2,800,000 |
| | STARR OF DAVID LLC | RONIN PROPERTY PARTNERS LLC | | |





*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
11 | P a g e

47.     On or about November 5, 2020, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Christopher E. Gordon v. Angel LaShawn Bradley, et al.

48.     On or about January 5, 2021, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Darleen Wolff v. ISC Park Avenue Corp.

49.     On or about January 26, 2021, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Nabi Wahab v. Mark Oleary, et al.

50.     On or about February 4, 2021, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Angela Pulatova v. Costco Wholesale Corporation.

51.     **In or around February 2021, Schwitzer opened another LLC – Frat Boys with Money LLC.**

52.     On or about March 4, 2021, Defendants secured a substantial settlement, and obtained a corresponding contingency fee, in the matter of Letonia S. Taylor v. Douglas R. Kroeger.

53.     **In March 2021, the Schwitzer Firm took a *second* $1.5m PPP draw, once again falsely certifying the funds were needed to maintain operations.**

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
*12 | P a g e*



**WILLIAM SCHWITZER & ASSOCIATES PC**

🛈 Why is my loan information here?

| Loan Amount | Amount Forgiven | Location | Industry | Date Approved |
|---|---|---|---|---|
| **$1,530,117** | **$1,539,213** Includes any accrued interest | New York, NY Urban | Offices of Lawyers | March 17, 2021 (Second Round) |

| Where applicants said the money will go | | Lender | Jobs Reported | Business Type |
|---|---|---|---|---|
| Payroll | $1,530,113 | Valley National Bank | 85 | Subchapter S Corporation |
| Utilities | $1 | | | |
| Mortgage Interest | $0 | | | |
| Health Care | $0 | Business Age | Loan Status | |
| Rent | $0 | Existing or more than 2 years old | Forgiven | |
| Refinance EIDL | $0 | | | |
| Debt Interest | $0 | | | |

54.    **In May 2021, Schwitzer,** *via* **the new entity Frat Boys with Money LLC, purchased a $6m Florida oceanfront condo.** Schwitzer made a downpayment and financed the remainder of the $6 million dollar purchase. Just two (2) months after taking ~$1.5 million dollars from the PPP program under the false claim of economic need to maintain operations, **Schwitzer's down payment on the oceanfront penthouse was… $1.5 million.**



**William Schwitzer** 🇺🇸 FRAT BOYS WITH MONEY, LLC *(Florida (US), 25 Feb 2021- )* 📍 820 2nd Avenue, 10th Fl, New York, NY, 10017

**TRD**  The Real Deal
https://therealdeal.com › miami › 2021/05/06  ⋮

**Jorge Pérez sells Hollywood penthouse for $6M**

May 6, 2021 — Property records show Schwitzer purchased the condo via the **limited liability company** called **Frat Boys With Money**.

**TBJ**  The Business Journals
https://www.bizjournals.com › South Florida › News  ⋮

**South Florida real estate projects in the pipeline for ...**

May 16, 2021 — The buyer was **Frat Boys with Money LLC**, which belongs to attorney William Schwitzer, CEO of William Schwitzer & Associates, a New York ...

*United States of America* ex rel *Tradesman. v. Schwitzer*
*Complaint*
*13 | P a g e*





| Searched Name | Party Type | Related Name | Record Date | Book Type | Book/Page | Instrument # | Comments2 | Case # | Consideration | Legal | Doc Type |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FRAT BOYS WITH MONEY LLC | To | PEREZ,JORGE M | 05/05/2021 | O | | | 117248950 | | | $6,000,000.00 | APOGEE BEACH CONDOMINIUM UNIT 2401 PER CDO BK/PG: 50129/131 | Deed Transfers of Real Property |
| FRAT BOYS WITH MONEY LLC | From | VALLEY NATIONAL BANK | 05/05/2021 | O | | | 117248951 | | | $4,500,000.00 | | Mortgage/ Modifications & Assumptions |

| Consideration | Legal | Doc Type |
|---|---|---|
| $6,000,000.00 | APOGEE BEACH CONDOMINIUM UNIT 2401 PER CDO BK/PG: 50129/131 | Deed Transfers of Real Property |
| $4,500,000.00 | | Mortgage/ Modifications & Assumptions |

55.     The Second Draw PPP funds – or more accurately, Schwitzer's penthouse downpayment – **was forgiven on or about October 19, 2021 in the amount of $1,539,213**, wrongfully transferring the cost of this luxury to the Federal Government, and in turn, the taxpayers.

**Recipient**

**WILLIAM SCHWITZER & ASSOCIATES PC**

| Location | Loan Status | Loan Amount | Date Approved |
|---|---|---|---|
| New York, NY | Forgiven as of Oct. 19, 2021 | $1,530,117 | March 17, 2021 |

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
*14 | P a g e*

56.    As the Treasury has set forth, the purpose of the Payroll Protection Program was to allow small businesses to "maintain their payroll, hire back employees who may have been laid off, and cover applicable overhead" – *not* to subsidize lavish real estate purchases or pad the profit margin of a law firm with no prerequisite economic need.

57.    Defendants thus made material misrepresentations on their applications for PPP funds, knowing lenders and the Federal Government would rely on said representations in paying PPP funds to Shwitzer.

58.    These funds ultimately were provided by the Federal Government, and in turn, at the expense of the taxpayers, in the aggregate amount of **$3,088,031**.

**Individual Liability**

59.    As the Schwitzer Firm's corporate entity, along with two (2) other entities under the complete control of Schwitzer, were utilized to perpetuate a fraud, and Schwitzer in effect diverted these funds to his own purposes and into his own pockets, the corporate veil warrants piercing. Limited corporate liability is not intended to indemnify and shield its principals from fraud of their own making utilizing the corporate form.

**CAUSE OF ACTION**
**False Claims Act**
**31  U.S.C. §§ 3729(a)(1)(A)-(B)**

60.    Relator realleges and incorporates by reference the allegations as contained in the foregoing paragraphs as though fully set forth herein.

61.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

62.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States Government, or authorized agent of the United States Government, for payment or approval.

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
15 | P a g e

63.    By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

64.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendants' conduct. The false claims were presented to third party lending institutions. Relator does not have access to the records of all such false or fraudulent statements or claims; however, at least four (4) discrete false claims are pled herein, as to the First and Second Round PPP applications and their respective forgiveness applications.

65.    Lenders, acting on behalf of the Federal Government, were guaranteed 100% of the PPP loans. Said lenders were unaware of the falsity of the records, statements, and claims made or caused to be made by Defendants. Said lenders paid the claims that would not be paid but for Defendants' illegal conduct.

66.    By way of the knowing and intentional false certifications presented to the Federal Government, Schwitzer wrongfully obtained **$3,088,031** of taxpayer money.

67.    By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, not less than trebled damages of **$9,264,093** before fines and penalties.

## **PRAYER FOR RELIEF**

**WHEREFORE**, *qui tam* Plaintiff/Relator prays for judgment against each Defendant as follows:

A. That this Court enter judgment against WILLIAM SCHWITZER & ASSOCIATES, P.C. in an amount equal to three times the damages the United Sates has sustained because of each Defendant's actions, specifically, treble damages of **$9,264,093**, and

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
*16 | P a g e*

civil penalties of not less than $13,946 and not more than $27,894 for each violation of 31 U.S.C. § 3729;

B.  That WILLIAM SCHWITZER be held personally liable in an amount not less than **$9,264,093** plus applicable civil penalties, and that such debt is non-dischargeable in bankruptcy pursuant to 11 U.S.C. §§523(a)(2)(A) & (B);

C.  That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

D.  That Relator be awarded all costs of this action, including attorney's fees and expenses; and,

E.  That Relator recover such other relief as the Court deems just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated:   New York, New York
         April 11, 2025

Respectfully submitted,

THE WILLIS LAW GROUP

By: _____
Daniel A. Johnston, Esq.
Justine Barbieri, Esq.
Attorneys for Plaintiff/Relator
1985 Forest Lane
Garland, TX 75042
(214) 736-9433

*United States of America ex rel Tradesman. v. Schwitzer*
*Complaint*
17 | P a g e